UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IFEANYI NWANESHIUDU,                    *

     Plaintiff,                          *

v.                                      *          Civil Action No. EA-25-1864

SAI OWINGS MILLS A, LLC,                *

     Defendant.                          *

**MEMORANDUM OPINION**

On June 11, 2025, Plaintiff Ifeanyi Nwaneshiudu initiated this action against Defendant

SAI Owings Mills A, LLC (SAI), doing business as Audi Owings Mills, alleging willful and

negligent violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*; breach

of contract; and fraud based on SAI's alleged failure to remit payment to the correct lienholder

on Mr. Nwaneshiudu's behalf.  ECF No. 1.  On March 26, 2026, SAI moved for summary

judgment.  ECF No. 34.  Mr. Nwaneshiudu did not respond, and the time for doing so has

expired.  Local Rule 105.2(a) (D. Md. Dec. 1, 2025).  No hearing is necessary.  Local Rule

105.6.  For the reasons set forth below, the motion is granted.

**I.      BACKGROUND**

The undisputed facts in the summary judgment record establish that on January 11, 2025,

Mr. Nwaneshiudu purchased an Audi automobile from SAI.  ECF No. 34-2 at 16:11–16.[1]  As part

of the transaction, Mr. Nwaneshiudu traded in a 2018 Jaguar automobile, which had an

outstanding loan in the amount of $14,599.92 (Jaguar loan).  ECF Nos. 34-2 at 14:10–11; 34-3 at

7.  SAI and Mr. Nwaneshiudu entered into a Retail Purchase Agreement and a Retail Installment

---

[1] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document, except that page numbers of exhibits that are deposition transcripts refer to the page and line number of the deposition transcript.

Sale Contract (Contract), wherein SAI agreed to pay the Jaguar loan lienholder, which was identified as "Navy Federal Credit Union" (Navy Federal), the remaining balance on the loan. ECF No. 34-3 at 7, 11. In total, Mr. Nwaneshiudu signed five separate documents that identified Navy Federal as the lienholder. *Id.* at 7, 11, 14, 16, 18, 20, 22–24. On January 23, 2025, SAI issued a check to Navy Federal for $14,599.92. ECF No. 34-5.

By letter dated January 20, 2025, NASA Federal Credit Union (NASA FCU) advised Mr. Nwaneshiudu that his monthly payment on the Jaguar loan, which was due on January 9, 2025, had not been received. ECF No. 34-6. Mr. Nwaneshiudu testified at his deposition that he did not make this payment because he "was going to trade the car off, [and he] didn't think to make a payment on a car that [he was] no longer going to have." ECF No. 34-2 at 30:8–10. Mr. Nwaneshiudu reached out to SAI via text messages on January 28, February 7, and February 12, 2025, to ask about the status of the Jaguar loan payoff, but he was unable to determine why SAI's January 23, 2025 payment had not satisfied his obligation. ECF No. 34-11. By notice dated February 23, 2025, NASA FCU informed Mr. Nwaneshiudu that if payment was not received by March 6, 2025, NASA FCU might repossess the Jaguar automobile. ECF No. 34-10 at 2. On February 28, 2025, NASA FCU notified Mr. Nwaneshiudu via email that his payment "remain[ed] **50** days past due." *Id.* at 5 (emphasis in original). At no time did Navy Federal "contact[] anyone at SAI to advise they received a check for a loan that did not belong to it." ECF No. 34-4 ¶ 7. On or about March 7, 2025, Mr. Nwaneshiudu went to SAI "to resolve the issues." ECF No. 34-2 at 65:16–19. At that time, SAI recognized that a check had been sent to Navy Federal instead of NASA FCU. *Id.* at 69:5–6. Therefore, on March 18, 2025, SAI issued a check to NASA FCU to pay off the Jaguar loan. ECF No. 34-7. "SAI furnished no information to any consumer reporting agency regarding [Mr. Nwaneshiudu's] NASA FCU loan." ECF No. 34-4 ¶ 9.

## II.    DISCUSSION

Mr. Nwaneshiudu's Complaint pleads four counts: (1) willful violation of the FCRA; (2) negligent violation of the FCRA; (3) breach of contract; and (4) fraud.  ECF No. 1.  Mr. Nwaneshiudu alleges that SAI's failure to remit the Jaguar loan payoff funds to NASA FCU in a timely manner caused him damages (a significant decrease in his credit scores and the subsequent denial of his application for a home improvement loan) and forced him to take time off from work.  *Id.* at ¶¶ 14–17.  SAI argues that it is entitled to judgment as a matter of law because it never made a report to a consumer reporting agency regarding Mr. Nwaneshiudu and therefore did not violate the FCRA.  ECF No. 34 at 1.  SAI further contends that Mr. Nwaneshiudu has not identified any contract term that SAI breached or any fraudulent misrepresentation on the part of SAI.  *Id.*  Following discussion of the applicable standard of review, each of Mr. Nwaneshiudu's claims is addressed in turn below.

### A.    Standard of Review

Summary judgment motion practice "is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Federal Rule of Civil Procedure 56 provides that the district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is

3

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Thus, to defeat summary judgment, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat. Bank of Ariz.* v. *Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968). On the other hand, summary judgment "is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories, and affidavits, the court is satisfied that there is no genuine factual issue for trial and the moving party is entitled to judgment as a matter of law." *Sylvia Dev. Corp.* v. *Calvert Cnty., Md.*, 48 F.3d 810, 817 (4th Cir. 1995).

The United States Court of Appeals for the Fourth Circuit has cautioned that summary judgment "cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs* v. *N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-569 (4th Cir. 2015) (quoting 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 2728 (3d ed. 1998) (internal quotation marks omitted)). At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In doing so, the district court "must view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor without weighing the evidence or assessing the witnesses' credibility." *Baynard* v. *Malone*, 268 F.3d 228, 234-235 (4th Cir. 2001).

**B.    FCRA**

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am.* v. *Burr*, 551 U.S. 47, 52 (2007). Among other things, the FCRA outlines the permissible

purposes, content, and disclosures of consumer reports, and the procedure for challenging the accuracy of information in a consumer report. 15 U.S.C. §§ 1681b, 1681c, 1681c-3, 1681f, 1681g, 1681i, 1681u, 1681v. The FCRA requires that consumer reporting agencies "follow procedures in reporting consumer credit information that both 'meet[ ] the needs of commerce' and are 'fair and equitable to the consumer.'"[2] *Saunders* v. *Branch Banking and Tr. Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (alteration in original) (quoting 15 U.S.C. § 1681(b)). The "FCRA also imposes duties on 'furnishers of information.'"[3] *Id.* at 147-148 (quoting 15 U.S.C. § 1681s-2). In particular, Section 1681s-2(a) of the FCRA "prohibits any person from furnishing information to a [consumer reporting agency] that the person knows is inaccurate." *Id.* at 148; *see also* 15 U.S.C. § 1681s-2(a).

Here, Mr. Nwaneshiudu alleges willful and negligent violations of the FCRA, asserting that SAI "violated 15 U.S.C. § 1681s by failing to fully and [ ]properly fulfill its obligations and remitting the [p]ayoff to NASA [FCU] in a timely manner, thereby causing NASA [FCU] to report this failure to the three credit bureaus." ECF No. 1 ¶¶ 25, 30, 33. As SAI observes, it is

---

[2] "The term 'consumer reporting agency' means any person which . . . regularly engages in . . . the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f).

"The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness . . . which is used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for" credit, insurance, employment, or other purpose authorized under the FCRA. 15 U.S.C. § 1681a(d)(1).

[3] Although not defined in the Fair Credit Reporting Act (FCRA), the term "furnisher of information" "is understood as including any entity . . . that provides information about its customers to credit reporting agencies . . . , including information about a customer's payments on their accounts." *Saunders* v. *Equifax Info. Servs., L.L.C.*, No. 3:05CV731, 2006 WL 2850647, at *1 n.1 (E.D. Va. Oct. 3, 2006), *aff'd sub nom.*, 526 F.3d 142 (4th Cir. 2008); *see also Akalwadi* v. *Risk Mgmt. Alts., Inc.*, 336 F. Supp. 2d 492, 508 (D. Md. 2004) (defining the "furnisher of information" as an entity "which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies") (citation omitted).

unclear which provision of the FCRA Mr. Nwaneshiudu relies upon to support his first two causes of action.  ECF No. 34-1 at 6.  The Complaint references Section 1681s, entitled "Administrative enforcement," which outlines the authorities of the Federal Trade Commission and other federal and state entities to enforce compliance with the FCRA.  ECF No. 1 ¶¶ 25, 33; 15 U.S.C. § 1681s.  As SAI correctly observes, Section 1681s does not provide a private right of action (ECF No. 34-1 at 6), nor does it outline a duty, prohibition, or substantive standard of care.  15 U.S.C. § 1681s.  Mr. Nwaneshiudu's Complaint also references Section 1681(n), which identifies categories of available relief for willful violations of the FCRA.  ECF No. 1 at 6–7; 15 U.S.C. § 1681(n).[4]  Taken together, the two statutory provisions Mr. Nwaneshiudu identifies in his Complaint do not provide a basis for a willful or negligent FCRA claim against SAI.

SAI argues that to the extent Mr. Nwaneshiudu seeks to invoke 15 U.S.C. § 1681s-2(b), his claim nevertheless fails.  ECF No. 34-1 at 7.  The undersigned concurs.  Section 1681s-2 sets forth the responsibilities of furnishers of information to consumer reporting agencies.  15 U.S.C. § 1681s-2.  Subsection (a) imposes a duty to furnish accurate information to consumer reporting agencies, whereas subsection (b) outlines the additional duties that are triggered upon notice of a dispute regarding the completeness or accuracy of information reported.  15 U.S.C. § 1681s-2(a)-(b); *see also* 15 U.S.C. § 1681i(a)(2).  Importantly, the "FCRA explicitly bars private suits for violations of § 1681s-2(a), but consumers can still bring private suits for violations of § 1681s-2(b)." *Saunders*, 526 F.3d at 149 (citing 15 U.S.C. § 1681s-2(c)).

Any claim Mr. Nwaneshiudu may seek to advance under Section 1681s-2 fails for multiple reasons.  First, the record is devoid of any evidence that SAI furnished information to a consumer reporting agency.  ECF Nos. 34-4 ¶ 9; 34-6.  Indeed, Mr. Nwaneshiudu testified at his

---

[4]  The penalties for knowing violations are set forth in 15 U.S.C. § 1681*o*. *Safeco Ins. Co. of Am.* v. *Burr*, 551 U.S. 47, 52 (2007).

deposition and admitted in discovery that the only entity that furnished information to credit reporting agencies was NASA FCU, which is not a party to this case.  ECF Nos. 34-2 at 42:22–43:20; 34-3 at 22–23.  Second, in his deposition Mr. Nwaneshiudu conceded that no inaccurate information was reported to any consumer reporting agency because he was, in fact, in default on his NASA FCU loan.  ECF No. 34-2 at 44:14–16 (Mr. Nwaneshiudu testifying that "if they reported that my account 15 is 30 days past due, I guess it's correct . . . I don't dispute it"); 46:9–12 ("I can concede that accurate information was reported to the agency . . . .  I don't think incorrect information was reported to the agency.").  Third, there is no evidence—or even an allegation—that Mr. Nwaneshiudu disputed the accuracy of information in his credit report, which would trigger his ability to file suit under the FCRA.  In sum, Mr. Nwaneshiudu has failed to establish an FCRA violation, whether willful or negligent, and SAI is therefore entitled to judgment as a matter of law on these counts.

### C.     Breach of Contract

Next, Mr. Nwaneshiudu alleges that "SAI breached its obligations under the Contract by failing to remit the [p]ayoff to NASA."  ECF No. 34-4 ¶ 39.  A federal court exercising diversity or supplemental jurisdiction over state law claims must apply the substantive law of the state in which it sits.  *Zahariev* v. *B&C Savannah Wildlife Enters., Inc.*, No. 23-1927, 2024 WL 3372909, at *3 (4th Cir. July 11, 2024).  When analyzing contract claims, Maryland applies the law of the jurisdiction where the contract was made unless the contract contains a choice of law provision.  *Cunningham* v. *Feinberg*, 441 Md. 310, 326 (2015) (collecting cases).  A breach of contract is a "failure, without legal excuse, to perform any promise that forms the whole or part of a contract."  *Weaver* v. *ZeniMax Media, Inc.*, 175 Md. App. 16, 51 (2007) (citing 23 Richard A. Lord, WILLISTON ON CONTRACTS § 63:1 (4th ed. Supp. 2006)).  The elements of a breach of contract claim under Maryland law are (1) a contractual obligation and (2) material breach of

that obligation.  *RRC Ne., LLC* v. *BAA Md., Inc.*, 413 Md. 638, 658 (2010); *Taylor* v. *NationsBank, N.A.*, 365 Md. 166, 175 (2001).  Ultimately, it is "the parties' agreement that . . . determines whether there has been a breach."  *Mathis* v. *Hargrove*, 166 Md. App. 286, 318-319 (2005).  Thus, understanding the contract's terms is key to determining whether there is a breach.

"Maryland follows the objective law of contract interpretation and construction." *Taylor*, 365 Md. at 178.  This interpretive principle provides that "where the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction" or use of extrinsic evidence.  *Wells* v. *Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251 (2001); *see also Clendenin Bros., Inc.,* v. *United States Fire Ins. Co.*, 390 Md. 449, 459 (2006).  A contract's "plain meaning is determined by 'focus[ing] on the four corners of the agreement,'" not what the parties may have subjectively intended.  *Martz* v. *Day Dev. Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022) (quoting *Cochran* v. *Norkunas*, 398 Md. 1, 17 (2007)) (alteration in original).  When the contract language is "plain and unambiguous," the Court must "determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated."  *Taylor*, 365 Md. at 178-179.

Here, the Contract provided that SAI would pay off the Jaguar loan to the lienholder identified as Navy Federal.  ECF No. 34-3 at 11; *see also id.* at 22 (Mr. Nwaneshiudu admitting that the Contract identified the Jaguar lienholder as Navy Federal).  Under Maryland, law, the "general rule is that a person who executes a document is legally obligated to read it before executing it."  *Benjamin* v. *Erk*, 138 Md. App. 459, 481 (2001); *see also Holzman* v. *Fiola Blum, Inc.*, 125 Md. App. 602, 629 (1999) ("One is under a duty to learn the contents of a contract before signing it; if, in the absence of fraud, duress, undue influence, and the like[,] [one who] fails to do so, [ ] is presumed to know the contents, signs at [their] peril, suffers the consequences of [their] negligence, and is estopped to deny [their] obligation under the contract.") (quoting 17

8

C.J.S. CONTRACTS § 137(b) (1963)).  What is more, Mr. Nwaneshiudu, who graduated from college and medical school and is licensed to practice medicine in 28 states, has an advanced education and sophisticated profession.  ECF No. 34-2 at 8:15–16, 19–22.  The fact that he did not carefully read the transaction documents before signing them is not legitimate basis upon which to foist liability upon SAI.  *Tucker* v. *American Residential Servs., LLC*, Civil Action No. PX-15-1844, 2018 WL 1471683, at *7 (D. Md. Mar. 26, 2018) (applying Maryland law and declining to void a contract where the terms were unambiguous and plaintiffs were well educated adults who chose not to read the contract carefully).  At bottom, SAI did not breach the Contract; rather, it performed as agreed.  Mr. Nwaneshiudu admitted that he signed five documents that identified Navy Federal as the lienholder.  ECF No. 34-3 at 22–23.  By contrast, none of the purchase documents identified NASA FCU as the lienholder.  Thus, the undisputed material facts establish that SAI complied with the terms of the Contract by issuing the payoff check to Navy Federal.  ECF 34-4 ¶ 6.  As Mr. Nwaneshiudu has failed to establish SAI's breach of any terms of the Contract, SAI is entitled to summary judgment on this count.

   **D.     Fraud**

   Lastly, Mr. Nwaneshiudu alleges that SAI "made numerous false representations" to him "regarding [SAI]'s intention to fulfill its obligations under the Contract."  ECF No. 34-4 ¶ 43.  When asked in an interrogatory for details regarding the specific alleged misrepresentations, Mr. Nwaneshiudu responded, in pertinent part:

> Plaintiff was told at least one time by an employee of the Defendant that the Defendant had remitted $14,599.92 (the "Payoff") to Navy [Federal].  This was a complete lie – as Navy [Federal] was never the lien[ ]holder on the Jaguar.  The fraudulent misrepresentations were any and all statements by the Defendant that the Defendant had remitted the Payoff to Navy [Federal]. These statements are demonstrably false – as Navy [Federal] was never the lien[]holder on the Jaguar.

ECF No. 34-12 at 8 (line break omitted).

9

Under Maryland law, a claim for fraud requires evidence that:

> (1) the defendant made a false representation to the plaintiff, (2) its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury resulting from the misrepresentation.

*Hoffman* v. *Stamper*, 385 Md. 1, 28, 867 A.2d 276 (2005).  At a minimum, Mr. Nwaneshiudu has failed to meet the first element.  As SAI correctly notes, the statements Mr. Nwaneshiudu identified are not false.  ECF No. 34-1 at 10–11.  SAI did pay Navy Federal.  ECF 34-4 ¶ 6.  The crux of Mr. Nwaneshiudu's fraud claim is that Navy Federal was misidentified as the lienholder.  Yet, he bears as much responsibility for that error as SAI because he did not review the Contract and other transaction documents to ensure their accuracy.  To the extent that Mr. Nwaneshiudu argues that SAI falsely represented that it paid off the Jaguar loan, the record is devoid of any evidence that such falsity was either known to SAI or that the representation was made with reckless indifference as to its truth.[5]  Nor is there any allegation or evidence that such misrepresentation was made for the purpose of defrauding Mr. Nwaneshiudu.  SAI is therefore entitled to summary judgment on this count.

## III.     CONCLUSION

For the foregoing reasons, SAI's motion for summary judgment (ECF No. 34) is granted.  A separate Order follows.

Date: June 5, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge

---

[5]  For example, the text messages between Ifeanyi Nwaneshiudu and an employee of SAI Owings Mills A, LLC (SAI), doing business as Audi Owings Mills, reflect that the SAI employee was surprised that the loan had not been paid off and that he had referred the matter to a manager.  ECF No. 34-11 at 2 ("Wow! I'll follow up with our title department."); *id.* at 3 ("I forwarded your text to my managers earlier.").